No. 10,980.

J. T. McCLELLAN, TAX COLLECTOR, VS. R. L. PETTIGREW.

The agent of the manufacturer of clocks in another State who solicits orders for them in Louisiana is not subject to the payment of a license tax.

The agent would be liable to the tax imposed by Sec. 23, Act No. 150 of 1890, if the clocks had been shipped to Louisiana, and after they had been located in Louisiana, the agent by peddling them disposed of them.

Tax Collector vs. Pettigrew.

Whether the tax can be imposed, either directly on the goods introduced into the State, or by license on the party, who is entrusted with their sale, depends upon the fact, whether the goods have been incorporated into the general mass of property subject to taxation.

If the manufacturer in another State sends an agent to Louisiana to find a purchaser for his manufactured goods, still at the factory, and he takes orders and the goods are shipped directly to the agent to be delivered to the purchaser, he is not liable to said tax imposed by said act. It is immaterial whether the sale is perfected by delivery. The clause of the Constitution of the United States which declares that Congress shall have the power to regulate commerce among the several States extends to negotiations for the sale of manufactured articles solicited in another State. Therefore any license tax imposed upon an agent or solicitor for soliciting orders for said goods, by sample, is in violation of said clause of the Constitution of the United States.

A tax collector has the same remedy to enforce the payment of parish as State taxes and licenses.

A tax on a peddler is sufficiently graduated when a specific sum is imposed upon them.

APPEAL from the Eighth District Court, Parish of Madison. *Montgomery, J.*

*A. L. Slack* for Plaintiff and Appellee:

1. A suit against a corporation, improperly docketed as against the agent, individually, can not prejudice plaintiff's rights, if from the petition and the admissions it appears it is in fact a suit against the corporation.

2. A tax collector has the same remedy to enforce the collection of parish as State taxes. Sec. 6, Act 106 of 1890; Sec. 84, Act 1888, p. 139. The imposition of a license tax carries with it the implied power to collect it.

3. A license tax at a stated sum against clock vendors is sufficiently " graduated." State vs. Chapin & Generelly, 35 An. 76; 40 An. 463.

4. INTER-STATE COMMERCE. A license tax against one who, as the agent of a firm in another State, simply canvasses for his principal and takes orders which are sent to and filled by his principal, is a regulation of commerce. *In re* White, Am. Dig. 1891, p. 740; but where the agent exhibits samples and the sale is conditional on the delivery of the goods, and they are consigned to the agent in this State and are by him delivered to the purchaser, this is not a restraint on commerce. Robbins Case, 120 U. S. 486, and cases cited below.

5. A license tax on clock vendors, under Sec. 13, Rev. Act 1890, where no discrimination is made, is legal and not in restraint of commerce. Howe Ma. Co. vs Gage, 676; Am. Dig. 1890, p. 631; Robbins vs. Dist., 120 U. S. 489; Am. Dig. 1889, p. 603; Am. Dig. 1890, p. 631; Am. Dig. 1891, p. 85; Ib. p. 740.

6. The rule simplified is: Mere taking of orders to introduce goods into this State is interstate commerce; but when orders are taken, and, under the same, goods are consigned to the agent here and are by him delivered here to the purchaser, this is no restraint on commerce, and such business is taxable, as it is carried on *in the State* concerning property that has become mobilized with the mass of the property in the State. See authorities above.

*Bell & Randolph* for Defendant and Appellant:

Section 13 of Act No. 150, Acts of 1890, which declares " all traveling vendors of stoves, lightning rods and clocks shall pay license annually of $200 in each parish of the State," in respect to appellants, is repugnant to paragraph 3, Sec. 8, Article 1, of the Constitution of the United States and the license demanded of them is illegal. 39 An., p. 680 and p. 853; Robbins vs Taxing District, Shelby County, Tenn., 120 U. S. 489; State vs. Agee, Vol. 3, Southern Reporter, p. 856; In re Kimmel, 41 Fed. Reporter, p. 775; Asher vs. State of Texas, 128 U. S. 129.

The opinion of the court was delivered by

McENERY, J. The plaintiff tax collector proceeded by rule against the defendant as agent of the Seth Thomas Clock Company, a corporation domiciled in the State of New York, to enforce the collection of State and parish licenses against said company as clock vendors, imposed by Sec. 13 of the Revenue Act of 1890.

An exception was filed by defendant, denying the right of the plaintiff to sue for the license due the parish of Madison.

The tax collector needs no special authority to collect the tax. The amount of the tax and the delivery to him of blank licenses and the tax rolls is a sufficient basis for his authority to enforce the collection of the tax or license.

But we think the authority for him to collect by legal process is contained in Act 106 of 1890, and Act 84 of 1888.

The exception was overruled, and the defendant answered denying liability because the license was not graduated, and that the license imposed was a tax upon interstate commerce.

The license tax was a specific sum for the business conducted by defendant. It was the only practical method of imposing the license tax, as there was no means of graduating the license among different peddlers of the same kind of goods. 40 An. 463; 35 An. 76.

On the second objection, the facts agreed upon to determine the liability of the defendant are as follows:

That the agent Pettigrew is temporarily in the parish of Madison as the solicitor of the Seth Thomas Clock Company, a corporation domiciled in the State and city of New York, a manufacturer of clocks, and that the said Pettigrew is engaged in said parish in soliciting orders from purchasers with a view of introducing said clocks into the State. That he obtains orders, forwards same by mail to the said clock company, then ships the clocks to points convenient to the purchaser, and they are delivered by the company at its own ex-

pense in this parish. There have been two wagons employed to deliver said clocks to the purchaser. This delivery is generally made under the direction of defendant.

The said defendant has no interest in or title to said clocks. The sales are generally made on a credit as per attached blank note, which is signed by the purchaser at the time of purchase, and forwarded to said Seth Thomas Clock Company. In traveling and soliciting said orders as above said defendant carries along a sample clock to show its style and operation and makes his sales by said sample.

For his services he is paid a salary by said clock company.

It is admitted that on orders so received said company has delivered clocks in this parish to purchasers. It is admitted parish license is same as State, as provided by Sec. 13 of the revenue act.

The note attached to the agreement, and a part of it, is as follows:
"$36.                  ———— P. O.    State of ————, 189—.

"On or before the first day of ——— after date, I promise to pay to Seth Thomas Clock Company, or order, the thirty-six dollars, value received, without discount or offset, waiving all rights to exemption allowed us by law as to the debt, with interest at the rate of eight per cent. from date, if not paid when due and presented. This note is given for one Fashion Calendar Clock, which I have this day purchased from said Seth Thomas Clock Company, to be delivered at —— premises within —— days from this date. This note is to be void only upon the condition that said Seth Thomas Clock Company refuse to deliver the said Fashion clock as above specified, and for no other cause whatever.

"There are no outside contracts or conditions affecting the sale of this note except what is herein specified."

There was judgment rendered in favor of the plaintiff, the tax-collector, from which the defendant appealed.

The reasons assigned for the judgment were that when the clocks reached Louisiana they were still the property of the defendants and remained their property until delivered to the purchasers; that the agent was not a drummer but a vendor of clocks, as the sale was not completed until the clock was delivered to the purchaser.

If the clocks had been shipped to Louisiana, the place of their destination, and were to remain there until a purchaser could be found, there can be no doubt that they would then have been incor-

porated into the general mass of the property of the State, subject to taxation.

This is clearly enunciated in the cases of Machine Company vs. Gage, 100 U. S., page 676; Brown vs. Houston, 114 U. S., page 622; and Robbins vs. Shelby County Taxing District, 120 U. S. 489; Hardware Company vs. Sheriff, 39 An. 849.

In the Robbins case, 120 U. S. 489, the court said:

" In a word, it may be said that in the matter of interstate commerce the United States are but one country, and are and must be subject to one system of regulations, and not to a multitude of systems. The doctrine of the freedom of that commerce, except as regulated by Congress, is so firmly established that it is unnecessary to enlarge further upon the subject.

" In view of these fundamental principles, which are to govern our decision, we may approach the question submitted to us in the present case, and inquire whether it is competent for a State to levy a tax or impose any other restrictions upon the citizens or inhabitants of other States, for selling or seeking to sell their goods in such State before they are introduced therein. Do not such restrictions affect the very foundation of interstate trade? How is a manufacturer or a merchant of one State to sell his goods in another State without in some way obtaining orders therefor? Must he be compelled to send them at a venture, without knowing whether there is any demand for them? "

The prohibition to levy a license for the sale of goods situated in another State does not depend upon the actual sale of the goods. It extends to the negotiation for the sale of the goods, to their introduction into the State, and the opening a market for them.

If the goods are situated in the State, having been shipped there for sale, and the negotiations are then made in relation to their final disposition, they are subject to taxation, as they have been incorporated into the general mass of property subject to taxation.

It does not then make any difference where they were manufactured.

Had the defendants shipped their clocks to the State, and then endeavored to find purchasers for them by peddling them through the parish of Madison, they would have made themselves liable to the license imposed by the revenue Act of 1890. 100 U. S. 676.

The admissions show that the defendant employed a solicitor who

exhibited a sample clock in order to procure orders. The clocks were in New York at the manufactory when the orders were solicited.

When an order for a clock was obtained it was shipped to the defendant solicitor for delivery. He delivered them by a wagon, having two of these vehicles in his service. The clocks were shipped to convenient points for delivery to the purchaser by defendant's agent.

After the orders were obtained the clocks, in fact, were shipped directly to the purchaser.

The fact that their agent]received and delivered them can not so locate them in the State as to make them a part of the general mass of the property subject to taxation. They became so when delivered to the purchaser.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is now ordered that there be judgment in favor of defendant, and plaintiff's demand be rejected and dismissed.